**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

**TIM P. DOWNEY,**
*individually and on behalf*
*of all others similarly situated*,

     **Plaintiff,**

**v.**                                **Civil Action No. _____**

**BABCOCK & WILCOX**
**ENTERPRISES, INC.,**
**and**
**STERLING INFOSYSTEMS, INC.,**

     **Defendants.**

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Tim P. Downey, on behalf of himself and all others similarly situated, and for his Class Action Complaint against Babcock & Wilcox Enterprises, Inc. and individual claims against Sterling Infosystems, Inc., alleges the following claims:

### I.     NATURE OF THE CASE

1.     Plaintiff brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x. The FCRA imposes several important requirements on employers that use consumer reports in the employment context (commonly known as a "background check"), which are designed to protect consumers like Plaintiff.

2.     Defendant Babcock & Wilcox ("B&W") is a corporate entity that has its primary offices in Lynchburg, North Carolina. B&W provides construction and support to entities in the power, industrial, and renewable businesses. It fills its staffing needs on projects with consumers like Plaintiff. As part of its hiring processes, B&W and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on

the contents of the background checks, B&W is obliged to adhere to certain requirements of the FCRA.

3.      B&W purchases its background checks from Defendant Sterling. In addition to performing the background searches for B&W's applicants, Sterling also "grades" or "adjudicates" the report results, assigning grades of "Pass," "Adverse," or "Review" (or words to that effect) after comparing the background check results to hiring criteria B&W provides to Sterling.

4.      As a nationwide consumer reporting agency ("CRA"), Sterling is obligated to meet certain requirements of the FCRA. Pertinent here, CRAs like Sterling must utilize reasonable procedures designed to ensure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

5.      By design, the FCRA protects the private consumer reporting of consumers' information by expressly prohibiting the use of that information unless a user satisfies one of the limited purpose requirements for such use. 15 U.S.C. § 1681b.

6.      Additionally, the FCRA imposes even tighter privacy restrictions on the use of a consumer report for an employment purpose.  While some uses are permitted based on the purpose alone, a person may not use a consumer report for an employment purpose until and unless it meets the rigorous requirements of 15 U.S.C. § 1681b(b). Access to such reports is presumptively unlawful, with Section 1681b(b)(2) providing the only means by which employers like B&W may access such reports in the employment context.

7.      Employers that seek to use consumer-report background checks in their hiring process must disclose to applicants their intent to obtain background checks in a standalone document consisting solely of the disclosure. As a separate requirement, the employer must also obtain consumers' written authorization to procure the report.

8.      Properly disclosing the intent to obtain background checks and obtaining the appropriate authorization protects consumers' privacy by limiting the access to private information to only specific instances, namely, where employers have followed the FCRA's steps before they procure background reports.

9.      These rights and restrictions cannot be waived, and are substantive rather than simply procedural.

10.     When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

11.     Providing a copy of the criminal background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

12.     Even where reports are accurate, notice is still mandated because it allows applicants to preemptively discuss any negative information with the employer before a hiring decision is made.

13.     Plaintiff brings a nationwide class claim against B&W under 15 U.S.C. § 1681b(b)(2) because, discovery will show, the disclosure form B&W provided Plaintiff and Class Members was defective in that it contained additional, extraneous information and therefore does not consist "solely of the disclosure."

14.     Plaintiff also brings a nationwide class claim against B&W under 15 U.S.C. § 1681b(b)(3) because, as a systematic omission in its hiring process, B&W failed to provide Plaintiff and other consumers with a copy of the criminal background report or a summary of rights under the FCRA before taking an adverse employment action against them.

15.     B&W is a serial violator of the FCRA as to Plaintiff and the classes of consumers he seeks to represent. The FCRA's requirements for employers' use of background checks are straightforward and easy to follow, yet B&W has been unable to do so.

16.     Plaintiff brings an individual claim against Sterling, as it provided a consumer report to B&W for use in its hiring process that included criminal history that was inaccurate. B&W refused to hire Plaintiff because of this criminal history.

## II.     JURISDICTION AND VENUE

17.     The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

18.     Venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2).

19.     Venue is also proper in this Court because B&W can be found in this District. 28 U.S.C. § 1391(b)(3). Among other things, B&W maintains its corporate headquarters in this District and Division, and obtains background checks from Defendant Sterling for use in hiring decisions made in this District and Division.

20.     Defendant Sterling can also be found in this District and Division, as it provides background reports like the one B&W obtained about Plaintiff to customers operating and making hiring decisions in this District and Division.

### III.  PARTIES

21.    Plaintiff Tim P. Downey is a "consumer" as protected and governed by the FCRA.

22.    Defendant B&W markets its services throughout the United States, including within this District and Division. At all pertinent times, B&W was a "user" of "consumer reports" for "employment purposes" as the FCRA defines those terms.

23.    Defendant Sterling Infosystems, Inc. is a CRA as defined and governed by the FCRA, marketing its services nationwide, including within this District and Division.

### IV.  FACTUAL ALLEGATIONS

**A.    Plaintiff's Acceptance of Offer of Employment With B&W.**

24.    Plaintiff applied for a position as an Environmental Health & Safety Supervisor with B&W in February of 2016. Whereas Plaintiff's ordinary work in this field is as an independent contractor, with this position he would have been directly employed by B&W, with the potential to continue employment on subsequent B&W projects as a direct employee.

25.    B&W offered Plaintiff the position, which he accepted, and the position was contingent on his passing a background check. Prior to the job offer, in the course of the application process, Plaintiff disclosed to B&W that he had never been convicted of any crime, honestly answering such question on B&W's application materials.

26.    After Plaintiff sent his application materials to B&W, and with the approval and urging of B&W, Plaintiff traveled from Texas to Michigan to begin working on a date set by B&W.

27.    Discovery will show that before conducting the background check, B&W presented Plaintiff with its FCRA disclosure form. Sterling designed the form and provided it to B&W, and the supposed purpose of this form is to comply with the disclosure requirements of Section 1681b(b)(2).

28.     Apart from stating that B&W will obtain a consumer report about Plaintiff, the disclosure form contains multiple unrelated and unnecessary statements that violate the so-called "standalone disclosure" requirement of Section 1681b(b)(2). Sterling's form has been the subject of significant litigation, with multiple courts having concluded that it violates Section 1681b(b)(2). *See Robrinzine v. Big Lots Stores, Inc*., 156 F. Supp. 3d 920, 924–25, 927–28 (N.D. Ill. 2016) (describing contents of Sterling form and collecting cases finding it violates Section 1681b(b)(2)).

29.     To comply with Section 1681b(b)(2) and thus permit the use of the consumer's private information, the only information permitted on the form is the statement that the employer may obtain a consumer report for employment purposes about the applicant. The inclusion of any additional information makes the form ineffective.

30.     The inclusion of the extraneous information made the disclosure form wordy, confusing, and difficult for Plaintiff to understand the nature of the information about him B&W intended to obtain.

31.     Plaintiff values his privacy and—all other things being equal and, if his choice—would not share his personal consumer report with any potential employer, including B&W.

32.     Had Plaintiff known that the form B&W provided to disclose its intent to procure a background check violated the law, he would not have agreed to the background check. Plaintiff values his privacy and would prefer it not be violated under any circumstances, particularly unlawful ones.

33.     Based on its use of the Sterling disclosure form, B&W ordered a background check on Plaintiff from Sterling on about February 3, 2016.

34.     As part of its arrangement with B&W, Sterling not only performs the background checks on B&W's applicants but also adjudicates the results against hiring criteria B&W provides

to Sterling. In Plaintiff's case, Sterling adjudicated Plaintiff as "Adverse" because of criminal history it incorrectly attributed to him.

35.     Alternatively, someone at B&W adjudicated Plaintiff as "Adverse" after viewing the background check from Sterling but, either way, the assignment of the Adverse grade sets in motion an automatic process for notifying Plaintiff that B&W would not employ him.

36.     Discovery will show that the entry of the "Adverse" grade by Sterling automatically triggers the sending of a notice letter ("Letter 1") designed to comply with Section 1681b(b)(3)'s "pre-adverse action" notice requirement. Discovery will also show that Sterling sends Letter 1 to consumers like Plaintiff automatically and without any communication from B&W other than possibly the assignment of the Adverse grade.

37.     Once Sterling adjudicates the report, discovery will show that the results, including the score of "Adverse," is made available electronically to B&W.

38.     Discovery will further show that a specified number of days after Letter 1 is sent, Sterling—automatically and without any further communication from B&W—sends a second letter ("Letter 2") denying the applicant employment with B&W.

39.     In reality, the adjudication of Adverse is the final step in the hiring process. No other action is required by either B&W or Sterling to cause the rejection of the consumer's application. If no one does anything else—Sterling, B&W, or the consumer—Sterling automatically mails a second similar notice letter that substantively repeats the previous notice.

40.     The B&W procedure here is substantively identical to the one considered by the Eastern District of Virginia Court in *Manuel v. Wells Fargo*.

41.     Sterling completed Plaintiff's background report and sent it electronically to B&W on around February 8, 2016.

42.     At the point of the adjudication of "Adverse" by Sterling, an "adverse action" had been taken on behalf of B&W—the adjudication as well as the effective final decision to bar Plaintiff from employment. No other action was necessary thereafter to deny Plaintiff employment.

43.     The Sterling report was inaccurate. Sterling improperly reported to B&W that Plaintiff had been convicted of a felony, which was not true.

44.     Due to this misreported felony conviction, Sterling adjudicated Plaintiff as "Adverse" under B&W's hiring criteria, which means B&W would not hire him. As the automatic process demands, Sterling then sent Letter 1 to Plaintiff on around February 9, 2016.

45.     Because Plaintiff was traveling to Michigan to begin work, he was not at home to receive his mail and therefore did not receive Letter 1 before leaving Texas to begin working for B&W.

46.     When Plaintiff arrived at the job site in Michigan and worked approximately half a day, a B&W representative informed him by telephone that Plaintiff could not continue working because of the results of his background check. All this representative would tell Plaintiff is that there was "a problem" with his background check and B&W could not continue to employ him.

47.     The B&W representative did not provide Plaintiff with a copy of his background check or a written summary of his FCRA rights. Plaintiff had to return to the jobsite and retrieve his belongings before he could leave.

48.     Sometime during the intervening period Sterling automatically dispatched Letter 2 to Plaintiff.

49.     B&W paid Plaintiff for his mileage to travel to Michigan and some of his salary for the travel time and sent him on his way. Plaintiff therefore returned to his home in Texas, and was involved in a hit-and-run accident during the trip that caused significant damage to his vehicle.

50.     Sometime after he returned home, Plaintiff received Letters 1 and 2. This was the first time Plaintiff viewed his Sterling report, and immediately recognized the mistaken felony conviction.

51.     But the fact that Plaintiff was told by B&W that he would not be hired upon his arrival in Michigan was not the adverse action that triggered the notice requirement of Section 1681b(b)(3). The adverse-hiring decision was the adjudication of Adverse by either Sterling or B&W.

52.     Because that decision was made before Plaintiff was provided with a copy of his report and written summary of his FCRA rights, B&W violated Section 1681b(b)(3) when it or Sterling adjudicated Plaintiff as Adverse. That Sterling may have adjudicated Plaintiff's report as Adverse does not save B&W from liability under Section 1681b(b)(3), as B&W is still responsible for ensuring that notice is provided before such adverse decisions are made.

53.     Plaintiff disputed the inaccurate felony conviction with Sterling, which corrected the report around March 2, 2016. But by that time, it was too late to save Plaintiff's employment with B&W. The company would not then hire him, even with the correction of his report.

54.     Plaintiff's potential employment with B&W, which would have been permanent rather than as an independent contractor, is forever ruined.

**B.      B&W's Practices and Policies.**

55.     B&W has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries operate. Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

56.     As part of that process, B&W presents all applicants with the same (or substantially the same) disclosure and authorization form it presented to Plaintiff. The form is unnecessarily long and confusing, and misstates the employer's obligations under the FCRA.

57.     B&W violates Section 1681b(b)(2) every time it obtains a consumer report based on the form (or one substantially similar to the form) it provided to Plaintiff.

58.     B&W routinely uses consumer reports to screen prospective employees, using consumer reports prepared by Sterling. Either Sterling or B&W will promptly review the consumer reports and grade the report as "Adverse" or "Not Adverse" (or something similar). As a matter of practice, B&W regularly fails to provide copies of consumer reports to job applicants against whom it takes an adverse action based in whole or part on consumer reports, before taking that adverse action.

59.     As a matter of practice, B&W regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

60.     As a matter of course, B&W uses the same business process for obtaining and using consumer reports, and for the "adjudication" of employment applications as it did with Plaintiff and members of the Class described below. In authorizing Sterling to mail pre- and final adverse action letters at some point after an adjudication of "Adverse" but not prior to B&W taking the adverse action, B&W deprives consumers of any reasonable time period by which to dispute or discuss any inaccurate or derogatory information in their background reports before a final hiring decision is made.

61.     Because B&W or Sterling grade reports as "Adverse" and *then* has Sterling send the Section 1681b(b)(3) notice on B&W's behalf to B&W applicants, B&W violates Section

1681b(b)(3) each time because the adverse-action is final before Sterling ever mails a notice to an applicant.

62.     As a result of these FCRA violations, B&W is liable to Plaintiff, and to each Class member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

63.     B&W's conduct and omissions were willful.  Because the FCRA was enacted in 1970, Defendant has had years to become compliant but has failed to do so.

64.     B&W, a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired Sterling not only to perform its background checks but also to (attempt to) provide B&W's adverse-action notices to job applicants.

65.     That B&W attempts to comply with Sections 1681b(b)(2) and (b)(3), although ineffectively, confirms that it is aware of the FCRA and the restrictions that statute imposes on employers. B&W therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

**C.     Additional Concrete Harm.**

66.     By implementing these policies, B&W deprived Plaintiff and Class Members of their congressionally mandated rights of privacy and to information to which Congress has deemed them entitled.

67.     Section 1681b(b)(2)(A) "establishes a right to specific information in the form of a clear and conspicuous disclosure. The statutory requirement that the disclosure be made in 'a document that consists solely of the disclosure' helps to implement the textual command that the

11

disclosure be clear and conspicuous." *Thomas v FTS USA, LLC*, 193 F. Supp. 3d 623, 631 (E.D. Va. 2016).

68.     Section 1681b(b)(2)(A) also "establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances." *Id*. at 631–32.

69.     "Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information. Specifically, . . . [consumers have] the right to receive a copy of the report on which the adverse action is based and a summary of their rights under the FCRA before the contemplated adverse employment action is taken." *Id*. at 637–38.

70.     "Relatedly, [§ 1681b(b)(3)] provides consumers against whom adverse employment action is contemplated with a right to have time to discuss the reports with their current or prospective employers and to correct the reports if necessary before the contemplated adverse action is taken. *Id*. at 638.

71.     The protections established by § 1681b(b)(2)(A) and by § 1681b(b)(3) "are clearly substantive, and neither is technical nor procedural." *Id*. at 632.

72.     By failing to provide Plaintiff and the Class Members that he seeks to represent with a clear and conspicuous disclosure in writing in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes as required by § 1681b(b)(2)(A), B&W denied Plaintiff and the class members information to which they were specifically entitled under the FCRA.

73.     By procuring the consumer reports of Plaintiff and the Class Members that he seeks to represent in this matter without making the disclosure required by § 1681b(b)(2)(A), B&W has unlawfully invaded Plaintiff's and the class members' rights of privacy created by the FCRA. *See Thomas*, 193 F. Supp. 3d at 636. ("Thomas . . . has alleged that Defendants invaded the statutory

right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A). This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing.").

74. The invasion of privacy exists regardless of the fact that a consumer may have signed the disclosure form or voluntarily divulged any criminal history to B&W during the application process, and regardless of the accuracy of any information in the resulting consumer report.

75. By taking adverse action against Plaintiff and the Class Members without first providing them with copies of their consumer reports, B&W denied Plaintiff and the Class Members information to which they were specifically entitled under the FCRA.

76. When it took adverse action against Plaintiff and the Class Members without providing them sufficient time to discuss the consumer reports and to correct the reports if necessary, B&W denied Plaintiff and the Class Members the opportunity that Congress provided through the FCRA.

77. The informational injuries, the breach of privacy injury, and the injury resulting from the deprivation of the opportunity to explain and discuss the issues raised by derogatory information in their consumer reports suffered by Plaintiff and the Class Members as a result of B&W's violations of §§ 1681b(b)(2)(A) and 1681b(b)(3) are particularized because those injuries happened to Plaintiff and each Class Member.

78. The informational injuries suffered by Plaintiff and the Class Members as a result of B&W's violations of §§ 1681b(b)(2)(A) and 1681b(b)(3) are real and concrete because "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of

which will constitute a concrete injury [and] [b]y extension, it is well within Congress' power to specify the form in which that information must be presented." *Thomas*, 193 F. Supp. 3d at 635.

79. The invasion of privacy injury suffered by Plaintiff and the Class Members as a result of B&W's violations of § 1681b(b)(2)(A) is real and concrete because "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue" and Congress has extended the right of privacy to information contained within one's consumer report. *Id*. at 636.

80. With § 1681b(b)(3), Congress identified a substantial risk of harm caused by the dissemination of inaccurate or misleading information regarding consumers, who could potentially suffer an adverse and often secret employment decision without an opportunity to address the underlying information or to know their rights. *See* Sen. Rep. No. 104-185, 35 (Dec. 14, 1995).

## V. LEGAL REQUIREMENTS

81. The FCRA, in Section 1681b(b)(2), regulates the conduct of persons who obtain a "consumer report" about employees or applicants:

> Except as provided in subparagraph (B) [circumstances not present here], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless --
>
> > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> >
> > (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

82. Courts, including within this Circuit, have roundly held that the disclosure must be in a standalone document, and that "consists solely of the disclosure" means just that.

83.     This requirement cannot be waived.  It is a strict bar upon the use of a consumer's private consumer report information.

84.     Discovery will show the B&W disclosure contains a statement that the applicant releases anyone supplying information about his background from any liability for supplying that information, unneeded statements about the need for consumers to be honest on their applications (for which there is no FCRA requirement), a misstatement of the obligations of B&W before taking adverse actions based on the contents of reports, and state-law requirements that are only applicable to a handful of jurisdictions.

85.     The disclosure also falsely informs applicants that "*[n]o applicant will be denied employment solely on the grounds of conviction of a crime. The nature of the offense, the date of the offense, the surrounding circumstances and the relevance of the offense to the position will be considered*." B&W or Sterling make no such considerations about the details surrounding a particular offense. Rather, report results are compared to B&W's hiring "matrix," which advises the adjudicator the grade to assign the report based on the results alone.

86.     At any rate, however, such there is no need to include such statements in the disclosure, as they are unnecessary and improperly clutter the disclosure.

87.     Nowhere does the disclosure inform applicants that B&W intends to obtain a consumer report for employment purposes about them. The disclosure mentions the FCRA but, in yet another example of the unnecessarily wordy and dense disclosure, directs those statements to and seek certifications from a "Subscriber," not from applicants like Plaintiff.

88.     As a result of its defective disclosure, B&W procured consumer reports regarding Plaintiff and those similarly situated for employment purposes without first obtaining a proper, written authorization to do so.

89.     Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --

> (i)     a copy of the report; and

> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

90.     The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the contents of the report with the prospective employer.

91.     This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance B&W) could obtain and use a consumer's personal information consumer report.

92.     In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like her with respect to employer use of a consumer report for an employment adverse action.

93.     Plaintiffs and each putative class member has been substantively harmed and injured by B&W in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

94.     The FCRA requires consumer reporting agencies ("CRAs") like Sterling to employ reasonable procedures to ensure maximum possible accuracy of the information they include in consumer reports. 15 U.S.C. § 1681e(b).

95.     Sterling failed to abide by this requirement by inaccurately reporting that Plaintiff has a felony conviction in his criminal history.

## VI.     DEFENDANTS ACTED WILLFULLY

96.     Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Defendants obtained or had available substantial written materials, which apprised them of their duties under the FCRA.

97.     Defendants obtained or had available substantial written materials which informed them of their duties under the FCRA.

98.     The written disclosure which precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, standalone form. *Thomas*, 193 F. Supp. 3d at 631; *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 434 (E.D. Va. 2015).

99.     B&W knew that it had an obligation to provide a standalone disclosure and obtain the consumer's authorization before procuring a consumer report.

100.     The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's standalone disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

101.    In accordance with their standard procedures, the consumer reporting agencies from whom B&W acquired consumer reports during the five years preceding the filing of this Complaint, including Sterling, required B&W to certify that it would comply with the standalone disclosure provisions of the FCRA.

102.    Discovery will show that before procuring Plaintiffs report, B&W did, in fact, certify to Sterling and other consumer reporting agencies that it would comply with the standalone disclosure and authorization provisions of the FCRA.

103.    In its contract with Sterling, B&W also agreed that before obtaining a consumer report, B&W would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

104.    By systematically inserting extraneous information into Plaintiff's and other Class Members' disclosures, B&W willfully violated 15 U.S.C. § 1681b(b)(2)(A).

105.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Center,* 305 F. Supp. 2d 429, 435 (M.D.

Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469 (E.D. Va. 2009) (providing, by Consent Order, ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

106.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S.C. § 1681b(b)(1)(A).

107.    Discovery will show that B&W knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

108.    Despite its certification, B&W knowingly violated 15 U.S.C. § 1681b(b)(2) and (b)(3).

109.    Despite knowing of these legal obligations, B&W acted consciously in breaching its known duties and depriving Plaintiff and other members of the Class of their rights under the FCRA.

110.    As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

# VII. CLASS ACTION ALLEGATIONS

111. Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b(b)(2), Plaintiff brings this action for herself and on behalf of a class (the "Impermissible Use Class"), defined as:

> All natural persons residing in the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the B&W procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar to the disclosure form provided to Plaintiff and described above.

> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to B&W releases of all their claims for all of their Class claims; and (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family.

112. Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b(b)(3), Plaintiff brings this action for herself and on behalf of a class (the "Adverse Action Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application or other request for placement to B&W or any of its subsidiaries and received a conditional job offer; (b) who were the subject of a consumer report which was used by B&W to make an employment decision from two years before the filing of this Action through the date the class list is prepared; (c) about whom was inserted an "Adverse" adjudication in the Sterling system; and (d) to whom B&W did not provide a copy of the consumer report and summary of rights as required by 15 U.S.C. § 1681b(b)(3) at least five business days before the date the consumer's report was first adjudicated with the "Adverse" flag.

> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to B&W releases of all their claims for all of their Class claims; and (d) Plaintiffs' counsel and persons who work for them or are related to them by marriage or as immediately family.

113. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by B&W or Sterling, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

114. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be B&W's uniform conduct and procedures; whether the disclosure form violates Section 1681b(b)(2) because of its extraneous language; whether rejecting an applicant for employment when a background report is adjudicated as "Adverse" is an "adverse action" subject to the FCRA notice requirements; whether B&W provided the required notices; when it did so; and, whether B&W acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Classes.

115. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, B&W uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Classes. Plaintiff seeks only statutory and punitive damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Classes. B&W uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

116. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country.

117. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by B&W's conduct. It would be virtually impossible for the members of the Classes to individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of B&W to give Class Members the proper notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

118. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by B&W's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## VIII.  CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681b(b)(2)(A)
### B&W Class Claim

119.    Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

120.    B&W's failure to provide members of the Impermissible Use Class with a standalone disclosure and properly obtain their authorization for B&W to obtain consumer reports for employment purposes violated 15 U.S.C. § 1681b(b)(2)(A).

121.    The conduct, action, and inaction of B&W were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

122.    Plaintiff and other members of the Impermissible Use Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from B&W in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

### COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A)
### B&W Class Claim

123.    Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

124.    B&W's failure to provide Plaintiff and members of the Adverse Action Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(i).

125.    Likewise, B&W's failure to provide Plaintiff and members of the Adverse Action Class the mandated FTC/CFPB Summary of FCRA Rights, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(ii).

126.     B&W's creation of a system in which Sterling mails pre- and final adverse action letters after hiring decisions are finally, already made robs consumers of a reasonable opportunity to dispute inaccurate information in their background reports, further violating Section 1681b(b)(3).

127.     B&W's obtaining and use of Plaintiff's and Class Members' consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

128.     The conduct, action, and inaction of B&W were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

129.     Plaintiff and other members of the Adverse Action Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from B&W in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

## COUNT THREE: VIOLATION OF 15 U.S.C. § 1681e(b)
### Sterling Individual Claim

130.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

131.     Sterling provided B&W with a consumer report that inaccurately stated that Plaintiff had been convicted of a felony.

132.     This statement was inaccurate. Plaintiff has no such felony conviction.

133.     A search of criminal records on the Texas Department of Public Safety's website confirms that Plaintiff has no felony conviction. A search of Gregg County, Texas, records—Sterling's supposed source of the incorrect felony conviction—reveals no felony conviction attributable to Plaintiff.

134. Had Sterling performed these same searches, which cost $3 and $0, respectively, it would have confirmed that its report about Plaintiff was inaccurate before providing the report to B&W.

135. Because a simple, low-cost Internet search would have confirmed that Plaintiff has never been convicted of a felony but Sterling inaccurately reported the opposite, Sterling failed to utilize reasonable procedures to ensure the maximum possible accuracy of the information in Plaintiff's report.

136. As a result of Sterling's negligence in inaccurately reporting a felony conviction to B&W, Plaintiff suffered actual damages in the form of at least lost wages, embarrassment, humiliation, lost time to correct the error, stress, loss of sleep, headaches, and out-of-pocket costs. 15 U.S.C. § 1681o.

137. The conduct, action, and inaction of Sterling were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

138. Plaintiff is entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Sterling in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681o.

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

1. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their Counsel to represent the Classes;

2.     That judgment be entered for the proposed Classes against Defendant B&W for statutory damages and punitive damages for violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

3.     That judgment be entered for Plaintiff against Defendant Sterling for Plaintiff's actual damages suffered due to Sterling's negligent and inaccurate reporting to B&W, pursuant to 15 U.S.C. § 1681o;

4.     That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

5.     That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**TIM P. DOWNEY,**

By:     _/s/ Leonard A. Bennett_
              Counsel

Leonard A. Bennett, NCB #21576
Craig C. Marchiando (*pro hac vice forthcoming*)
Elizabeth W. Hanes (*pro hac vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com

*Counsel for Plaintiff and the Classes*